**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEAN KENOLD BRUNY,<br>Petitioner,<br>v.<br>WARDEN, DESERT VIEW DETENTION FACILITY, *et al.*,<br>Respondents. | Case No. 5:26-cv-3781-ACCV<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. RULING

On July 8, 2026, Jean Kenold Bruny ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, against Ernesto Santacruz, Field Office Director, Enforcement and Removal Operations, Los Angeles Field Office, U.S. Immigration and Customs Enforcement ("ICE"); David J. Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General of the United States. (Dkt. 1.) For the reasons stated herein, the Court GRANTS the Petition and ORDERS Respondents to release Petitioner Jean Kenold Bruny (A# 220-056-355) from custody immediately.

## II. BACKGROUND

Petitioner is a native and citizen of Haiti who entered the United States on or around September 22, 2021, without inspection. (Dkt. 1 at 9.) The same day, Petitioner was released by the DHS on Humanitarian Parole and Alternatives to Detention ("ATD") monitoring. (*Id.*) After release, Petitioner asserts he was not placed in removal proceedings. (*Id.*) Petitioner applied for asylum with the United States Citizenship and Immigration Services ("USCIS"). (*Id.*) Petitioner's application for asylum remains pending as of September 6, 2022. (*Id.* at 30.)

Petitioner asserts he never missed an application appointment, complied with all asylum application appointments, and complied with all release reporting requirements such as monthly photo submissions for two years from September 2021 to September 2023. (*Id.* at 10.) Petitioner was granted work authorization and had steady employment as a delivery driver where he previously encountered DHS without incident. (*Id.*) Petitioner is married, has a daughter, and has developed community ties and a stable residence during his release. (*Id.*)

On June 12, 2026, Petitioner was detained by ICE without notice after making a delivery to a military base. (*Id.* at 4, 10.) Petitioner is currently in ICE custody at the Desert View Detention Facility in Adelanto, California. (*Id.* at 4.)

On July 12, 2026, Petitioner filed his Petition challenging his detention as unlawful in violation his Fifth Amendment due process rights and the Administrative Procedure Act ("APA"). (*Id.* at 10-15.) Among the relief he seeks, Petitioner requests that the Court grant the Petition and issue an order requiring his immediate release. (*Id.* at 16.)

On July 14, 2026, the parties voluntarily consented to the assigned magistrate judge's jurisdiction under General Order 26-05. (Dkt. 6.)

Respondents filed their Answer to the Petition on July 15, 2026. (Dkt. 8.) Respondents argue the Petition should be denied because Petitioner did "not request a

bond hearing prior to filing his habeas action . . . [and] therefore has failed to exhaust his administrative remedies and failed to establish why his demand to be released should not be heard in the first instance by the immigration court." (Dkt. 8 at 2.) Respondents did not assert any arguments responsive to Petitioner's due process and APA claims. (*See generally* Dkt. 8.)

## III. LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV. DISCUSSION

### A. Waiver of Administrative Exhaustion Requirement.

Petitioner's requested relief, *inter alia*, is an order granting the Petition and that Petitioner be released immediately. (Dkt. 1 at 16.) Respondents argue that the Court should deny the Petition because Petitioner has not requested a bond hearing and so he has failed to exhaust administrative remedies. (Dkt. 8 at 2.)

While administrative exhaustion is not a jurisdictional requirement for habeas

petitions filed under 28 U.S.C. § 2241, the courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Liang v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be futile, gestures, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

Here, Petitioner concedes he has not fully exhausted his administrative remedies, but argues that exhaustion should be excused on four grounds: (1) a bond hearing request to the Board of Immigration Appeal ("BIA") would be futile because immigration judges continue to apply the decisions in in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 26 (BIA 2025) in spite of *Maldonado Bautista*[1]; (2) Petitioner will suffer irreparable harm to remain detained because "his removal proceedings proceed in an expedited manner to order deportation before [judicial review of his Petition for possible] release, such that he [would be] no longer eligible for bond post-removal order"; (3) Petitioner will suffer irreparable harm

[1] *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

by remaining in prolonged detention citing to statistics from the Executive Office for Immigration Review ("EOIR") that bond appeal cases can take six months or longer and appeals can take over a year or longer to resolve: and (4) the BIA lacks authority to adjudicate Petitioner's constitutional claims. (Dkt. 1 at 3-4; Dkt. 9 at 3-4.) Other than arguing that exhaustion should be required, Respondents do not directly address Petitioner's arguments for a waiver. (*See generally* Dkt. 8.)

Here, the Court finds that several factors favor waiving exhaustion in this case. First, Petitioner has presented compelling reasons that he would suffer significant irreparable harm if forced to wait approximately six to nine months for the BIA to render a decision on his appeal. Petitioner also has a wife and daughter in the United States. Additionally, because Petitioner's removal proceedings are expedited to order deportation before the opportunity to obtain judicial review, efforts to obtain relief from the BIA would be futile.

Second, the Petition presents constitutional and legal challenges to the Petitioner's arrest and detention without a bond hearing. It is not clear that the BIA would consider such claims because it "does not have jurisdiction to determine the constitutionality of the statute it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *See In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer."); *See e.g., Bagues–Valles v. INS*, 779 F.2d 483, 484 (9th Cir.1985) (petitioners not precluded from raising due process claim even though not raised during administrative proceedings because BIA has no jurisdiction to adjudicate constitutional issues).

Because of the irreparable harm the Petitioner would suffer, and the nature of claims presented in the Petition, the Court waives the prudential exhaustion

requirement.[2]

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that the revocation of his parole and his re-detention violates his procedural due process rights under the Fifth Amendment. (Dkt. 1 at 12-13.) Respondents only assert that the Petition should be dismissed for failure to exhaust administrative remedies because Petitioner did not request a bond hearing in front of an immigration judge. (Dkt. 8 at 2-3.) Respondents provide no response to Petitioner's due process claims in their Answer. (*See generally* Dkt. 8.) Accordingly, the Court construes Respondents' failure to address Petitioner's due process claims as a concession. *See e.g., Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including Fifth Amendment due process claims); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *Aperyan v. Semaia*, No. 5:26-CV-00699, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026) (same). Nonetheless, the Court analyzes Petitioner's due process claim below for the sake of thoroughness.

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process extends to noncitizens in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or

---

[2] Because the Court concludes that waiver is warranted on these grounds, it declines to address Petitioner's argument that an appeal would be futile.

permanent.”); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S. Ct. 977, 41 L. Ed. 140 (1896) (“It must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by [the Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property without due process of law[.]”); *Trump v. J. G. G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) (“It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.”) (citation modified).

“A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.” *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

**1. Protected Liberty Interest**

It is well-established that freedom from government detention is a protected liberty interest. *See Zadvydas*, 533 U.S. at 690. Though the liberty interests of U.S. citizens compared to noncitizens “are not coextensive,” the Fifth Amendment nonetheless “entitles [noncitizens] to due process of law in deportation proceedings.” *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–06 (9th Cir. 2022) (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)). Many courts in this Circuit have affirmed the principle that “even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody.” *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025).

Accordingly, Petitioner—who was conditionally paroled into the United States, has lived in the country since his parole, complied with all of the conditions of his parole, and has valid work authorization—has a vested liberty interest in remaining free from detention.

**2. *Mathews* Test**

The Court applies the three-part test established in *Mathews v. Eldridge* to determine whether the government's procedures were constitutionally sufficient. 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (cleaned up).

The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

Because Petitioner was initially conditionally paroled into the United States, has lived in the community for over five years, and has received valid work authorization, he has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey v. Brewer*, 408 U.S. 471, 481–82, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions . . . . [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). Here, as noted, Petitioner was released from DHS custody on humanitarian parole and ADT after his initial apprehension and has been free for more than five years, living in the community and complying with the conditions of his parole. (Dkt. 1 at 9.) His release constituted an "implied promise" that his liberty would not be revoked unless he failed to live up to the conditions of his release. *See Morrissey*, 408 U.S. at 482.

///

Accordingly, Petitioner's private interest in retaining his liberty is significant and this factor weighs in Petitioner's favor.

Second, the Court finds that the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community. *Zadvydas*, 533 U.S. at 693–94. Respondents do not argue that Petitioner is or has been previously determined to be at flight risk or a danger to the community. *See Pinchi*, 792 F. Supp. 3d at 1034 ("As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither."). Respondents do not contest that Petitioner has abided by the conditions of his initial release from Respondents' custody over five years ago. Based on the record before the Court, Petitioner appears to have no criminal history of arrests or convictions. Thus, the Court finds no reason to determine that Petitioner would be a danger to the community. Accordingly, the Court finds that the risk of erroneous deprivation is high, and this factor weighs in Petitioner's favor.

Third, the Court finds that the government has a low interest in keeping Petitioner detained. As explained, the government has not shown that Petitioner's detention serves either to prevent flight or a danger to the community. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("As to the third factor, the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). "Nor can the government suggest that the cost of providing such protections would be fiscally or administratively onerous." *Pinchi*, 792 F. Supp. 3d at 1036. "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, 803 F.

Supp. 3d 1035 (E.D. Cal. 2025). "The government's interest is further diminished where a person 'has consistently appeared for her immigration hearings . . . and [ ] does not have a criminal record." *Id.* (citation omitted).

After considering all three *Mathews* factors, the Court concludes that Petitioner's re-detention without any pre-deprivation notice and a hearing violates his procedural due process protections. Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims.

## V. CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS:

(1) Respondents to release Petitioner Jean Kenold Bruny a.k.a Kenola Jean (A# 220-056-355) immediately under the same conditions as he was released prior to his re-detention;

(2) Respondents to return all of Petitioner's property that Respondents' confiscated when they arrested Petitioner;

(3) Respondents to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

(4) That any future enforcement actions after Petitioner's release must comply with Due Process requirements.

DATED: August 19, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge